[Cite as *State v. Gabriel*, 2010-Ohio-3151.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO,                          )
                                        )    CASE NO.    09 MA 108
    PLAINTIFF-APPELLEE,            )
                                        )
    - VS -                          )    O P I N I O N
                                        )
MICHAEL GABRIEL, SR.,                   )
                                        )
    DEFENDANT-APPELLANT.           )


| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Criminal Appeal from Common Pleas Court, Case No. 08CR1509. |
| JUDGMENT: | Affirmed in part; Modified in part. |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee: | Attorney Paul Gains<br>Prosecuting Attorney<br>Attorney Ralph Rivera<br>Assistant Prosecuting Attorney<br>21 West Boardman Street, 6th Floor<br>Youngstown, Ohio  44503 |
| For Defendant-Appellant: | Attorney Timothy Young<br>Ohio Public Defender<br>Attorney Melissa Prendergast<br>Assistant State Public Defender<br>250 East Broad Street, Suite 1400<br>Columbus, Ohio  43215 |

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  June 30, 2010

VUKOVICH, P.J.

¶{1} Defendant-appellant Michael Gabriel, Sr., appeals the sentence entered in the Mahoning County Common Pleas Court after a jury found him guilty of obstructing official business. Three issues are raised in this appeal. The first two deal with the trial court's imposition of a fine and court costs. His first argument is that the trial court violated the sentencing statutes when it failed to consider his present and future ability to pay fines and costs before it imposed such financial sanctions. His second argument is that the trial court violated R.C. 2947.23 when it failed to inform him that his failure to pay court costs could result in the court ordering him to perform community service. The third and final argument is that trial counsel was ineffective. For the reasons that follow, the judgment of the trial court regarding appellant's conviction is affirmed, and his sentence is affirmed in part and modified in part.

STATEMENT OF CASE[1]

¶{2} On January 15, 2009, Gabriel was indicted for obstructing official business, a violation of R.C. 2921.31(A) and (B), a fifth degree felony. The incident that led to this indictment occurred while Gabriel's son, Michael Gabriel, Jr., was being arrested at Gabriel's house. Testimony at trial revealed two different versions of events that transpired during the arrest.

¶{3} According to the two officers, Officer Craig and Sergeant Vance, they went to Gabriel's house to execute the felony arrest warrants on Gabriel, Jr. They knocked on the door and asked Gabriel if his son was there and if they could talk to him. The officers testified that Gabriel was cooperative; Gabriel informed them that Gabriel, Jr. was there, and Gabriel brought Gabriel, Jr. outside. However, at the point that Sergeant Vance began arresting the son, Gabriel's cooperative attitude ceased. Gabriel's attitude became "heightened" and he approached Sergeant Vance from behind and questioned the officers about what was going on. (Tr. 229). Although Gabriel did not touch Sergeant Vance when he approached him, Officer Craig indicated that Gabriel "bolted" toward Sergeant Vance. (Tr. 280). Officer Craig explained that by the term "bolted" he meant not a full sprint, but a "quick charge, quick walk." (Tr. 280). Officer Craig then allegedly told Gabriel to calm down and back up,

---

[1] Neither of the state's briefs provide a statement of the case; it agreed with Gabriel's statement of the case. See App.R. 16(B). Thus, the statement of the case is derived from the case file and Gabriel's statement of the case.

but Gabriel did not comply. The officer then told him again to back up and gave him a push. Gabriel again did not comply, but instead took a "bladed stance" with his fist clenched at his side and told Officer Craig that he assaulted Gabriel. The officer once again pushed Gabriel and Gabriel responded by pushing back. Officer Craig then told Gabriel that he was under arrest for obstructing official business. The officer then tried to handcuff Gabriel, but Gabriel took a position that hindered the officer's attempts. It was not until Officer Craig took Gabriel to the ground that he was able to handcuff Gabriel and arrest him.

¶{4} Gabriel's testimony differed in some respects from that of the officers. Gabriel contends that he was cooperative throughout the entire process. He contends that while he did ask what was going on when his son was being arrested, he did not approach Sergeant Vance. Furthermore, he contends that he complied with Officer Craig's commands to back up. According to Gabriel, the officer shoved him after he had backed up, told him he was under arrest and then threw him to the ground to handcuff him. Gabriel testified that he is a veteran on disability and he could not "charge" Sergeant Vance or fight back when Officer Craig was pushing him.

¶{5} Gabriel was tried before a jury and found guilty. 05/21/09 J.E. The trial court sentenced him to two years community control and three years of post release control. As a condition of community control, he was ordered to serve thirty days in jail. He was then fined $2,500 with $2,000 suspended and ordered to pay costs.

¶{6} Gabriel timely appeals. Counsel filed an appellate brief solely addressing the sentence imposed. Gabriel filed a *pro se* brief arguing that trial counsel's performance was ineffective. The state responded to each brief.

<u>FIRST ASSIGNMENT OF ERROR</u>

¶{7} "THE TRIAL COURT PLAINLY ERRED WHEN IT IMPOSED A $2,500.00 FINE AND COURT COSTS AS PART OF MR. GABRIEL'S SENTENCE WITHOUT CONSIDERING HIS PRESENT AND FUTURE ABILITY TO PAY, AS REQUIRED BY R.C. 2929.19(B)(6). SENT. T. 8; MAY 28, 2009 JUDGMENT ENTRY OF SENTENCING; CRIM.R. 52."

¶{8} Under this assignment of error, Gabriel argues that although he did not object at sentencing to the court's imposition of a fine and court costs, the trial court committed plain error when it did so without first considering his present and future ability to pay the fine and court costs.

¶{9} Our analysis begins with the imposition of the fine. Usually a reviewing court reviews a trial court's decision to impose a fine under an abuse of discretion standard of review. *State v. Keylor*, 7th Dist. No. 02MO12, 2003-Ohio-3491, ¶9. However, since Gabriel did not object to the fine at sentencing, we review the trial court's imposition of the fine for plain error. As we have previously explained:

¶{10} "Where the offender does not object at the sentencing hearing to the amount of the fine and does not request an opportunity to demonstrate to the court that he does not have the resources to pay the fine, he waives any objection to the fine on appeal." Id. at ¶12.

¶{11} R.C. 2929.18 and R.C. 2929.19 govern the imposition of financial sanctions. Under R.C. 2929.18(A)(3)(e) an offender convicted of a fifth degree felony can be fined up to $2,500. However, R.C. 2929.19(B)(6) states that before imposing a fine under R.C. 2929.18, "the court shall consider the offender's present and future ability to pay the amount of the sanction or fine."

¶{12} A trial court does not need to explicitly state in its judgment entry that it considered the defendant's ability to pay because the determination of whether that requirement can be satisfied can be gleaned from a review of the entire record. *State v. William*s, 4th Dist. No. 08CA3, 2009-Ohio-657, ¶20 (indicating that it is more preferable for a court to state it considered a defendant's ability to pay in the judgment entry). We have previously indicated, as have other appellate courts, that when a pre-sentence investigation report (PSI) contains financial information and the court states that it considered the PSI, that statement is sufficient to comply with R.C. 2929.19(B)(6). *State v. Weyand*, 7th Dist. No. 07CO4, 2008-Ohio-6360, ¶13-14. See, also, *State v. Rickett*, 4th Dist. No. 07CA846, 2008-Ohio-1637, ¶6; *State v. Bemmes*, 1st Dist. No. C-010522, 2002-Ohio-1905. Likewise, statements by the trial court, defense counsel and the offender at sentencing may also demonstrate compliance with R.C. 2929.19(B)(6). *Weyand*, supra, at ¶13-14; *Rickett*, supra, at ¶7; *Bemmes*, supra.

¶{13} In the case at hand, there is evidence in the record that the trial court considered the present and future ability to pay the fine before imposing it. At sentencing, defense counsel informed the court that Gabriel is a 63-year-old disabled man who receives a disability pension. 05/27/09 Tr. 5. The PSI, which was discussed at sentencing, confirms that information and indicates that Gabriel is unemployed. The

report further notes that Gabriel asserts he has no financial assets and his financial obligations are a truck payment, a YMCA membership, utilities and insurance.

¶{14} The sentencing judgment entry clearly indicates that it considered the PSI when imposing the fine. It also provides another indication that the trial court considered Gabriel's present and future ability to pay the fine when after imposing the fine it stated:

¶{15} "Note: Defendant is the owner of real estate and currently receives a V.A. disability income." 05/28/09 J.E.

¶{16} Likewise, the following statement by the trial court at sentencing also indicates that it considered R.C. 2929.19(B)(6) when it imposed the fine and suspended a portion of it because of Gabriel's financial inability to pay the full fine:

¶{17} "There will be a fine of $2,500. For good cause, $2,000 will be suspended. The balance is to be paid within 90 days." 05/27/09 Tr. 8.

¶{18} Thus, the record verifies that the trial court considered Gabriel's present and future ability to pay the fine before imposing it.

¶{19} Besides arguing that the court failed to consider his ability to pay, Gabriel also appears to be contending that he cannot afford to pay the fine. In the brief, he emphasizes that he was found indigent and counsel was appointed for him. However, that fact does not prohibit the court from imposing a fine. We have previously explained:

¶{20} "[A] determination that a criminal defendant is indigent for purposes of receiving appointed counsel does not prohibit the trial court from imposing a financial sanction pursuant to R.C. 2929.18. This is because the ability to pay a fine over a period of time is not equivalent to the ability to pay legal counsel a retainer fee at the onset of criminal proceedings." *Weyand*, 7th Dist. No. 07CO40, 2008-Ohio-6360, at ¶16. (Internal citations omitted).

¶{21} Consequently, considering all of the above, the trial court did not abuse its discretion in imposing the fine, let alone commit plain error.

¶{22} Having concluded that the trial court did not err in imposing the fine, we now turn to the trail court's imposition of court costs. Gabriel argues that the trial court erred when it imposed court costs without first considering R.C. 2929.19(B)(6). This court has previously addressed this exact argument and found it to be without merit.

Id. at ¶17.  We explained that R.C. 2929.19(B)(6) is not applicable and there is no requirement to consider the present and future ability to pay before ordering costs.  Id.

¶{23} Based on the foregoing, Gabriel's first assignment of error is without merit.

SECOND ASSIGNMENT OF ERROR

¶{24} "THE TRIAL COURT PLAINLY ERRED WHEN IT IMPOSED COURT COSTS AS A PART OF MR. GABRIEL'S SENTENCE WITHOUT NOTIFYING HIM THAT HIS FAILURE TO PAY COURT COSTS MAY RESULT IN THE COURT'S ORDERING HIM TO PERFORM COMMUNITY SERVICE.  MAY 28, 2009 JUDGMENT ENTRY OF SENTENCING; CRIM.R. 52."

¶{25} Under this assignment of error Gabriel argues that the trial court erred by imposing court costs without first notifying him that under R.C. 2947.23 his failure to pay court costs could result in the court ordering him to perform community service. The state counters this argument by contending that the issue is not ripe for review.

¶{26} R.C. 2947.23 provides, in pertinent part:

¶{27} "(A)(1) In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs.  At the time the judge or magistrate imposes sentence, the judge or magistrate **shall notify the defendant of both of the following**:

¶{28} "(a) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

¶{29} "(b) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount."  (Emphasis added.)

¶{30} It is undisputed that the trial court did not notify Gabriel that his failure to pay courts costs could result in an order to perform community service.  Furthermore, nothing in the record indicates that Gabriel paid court costs or that the trial court is attempting to order Gabriel to perform community service because of that failure.

**¶{31}** A few appellate courts have held that while R.C. 2947.23 makes it mandatory for the trial court to inform a defendant that he/she could be ordered to perform community service, until the defendant suffers prejudice from the trial court's failure, the issue is not ripe for appeal. *State v. Boice*, 4th Dist. No. 08CA24, 2009-Ohio-1755, ¶11[2]; *State v. Nutter*, 12th Dist. No. CA2008-10-0009, 2009-Ohio-2964, ¶12; *State v. Kearse*, 3d Dist. No. 17-08-29, 2009-Ohio-4111, ¶7-15. Prejudice would occur if the defendant fails to pay the court costs and if the trial court orders community service for that failure. *Boice*, supra.

**¶{32}** In 2009 and early 2010, we followed those holdings in *State v. Walters*, 7th Dist. No. 08CO34, 2009-Ohio-6762, ¶12 and *State v. Heddleson*, 7th Dist. No. 08BE41, 2010-Ohio-1107, ¶17-21.[3] However, in *Heddleson*, there was a dissent that indicated that the issue is ripe for review and that the appellate court should outright hold that the trial court is foreclosed from ordering community service if the offender fails to pay court costs. *Heddleson*, supra, ¶23-24 (Vukovich, J., dissenting).

**¶{33}** Reconsidering our prior majority positions in *Heddleson* and *Walters*, we find that the dissent's position in *Heddleson* is more logical. Even though the offender has not yet been ordered to serve community service for any failure to pay court costs, judicial economy is best served by finding that the trial court cannot order community service for the failure to pay court costs when the court did not advise in accordance with R.C. 2947.23 that community service could be ordered if the offender failed to pay

---

[2]It is acknowledged that the Fourth Appellate District has also held that the issue is ripe for review. *State v. Burns*, 4th Dist. Nos. 08CA1, 08CA2 and 08CA3, 2009-Ohio-878, ¶12 and fn.3, departing from its 2006 decision in *State v. Ward*, 168 Ohio App.3d 701, 2006-Ohio-4847, ¶41, holding that the issue was not ripe for review. Following the *Burns* decision, the Fourth Appellate District has issued at least three decisions, including the *Boice* decision, that reinstated the *Ward* holding (that the issue is not ripe for review). See *State v. Moore*, 4th Dist. No. 09CA2, 2009-Ohio-5732, ¶7; *State v. Welch*, 4th Dist. No. 08CA29, 2009-Ohio-2655, ¶13-14. Thus, it appears the Fourth District has implicitly overruled its decision in *Burns*.

However, Judge Harsha of the Fourth District has consistently dissented from the holding that the issue is not ripe for review. *State v. Moore*, 4th Dist. No. 09CA2, 2009-Ohio-5732, ¶8 (Harsha, J., dissenting); *State v. Welch*, 4th Dist. No. 08CA29, 2009-Ohio-2655, ¶16 (Harsha, J., dissenting); *State v. Boice*, 4th Dist. No. 08CA24, 2009-Ohio-1755 (Harsha, J., dissenting); *State v. Slonaker*, 4th Dist. No. 08CA21, 2008-Ohio-7009, ¶9 (Harsha, J., dissenting). He contends that judicial economy would be served if the issue was actually decided and, as such, instead of stating in dicta that community service cannot be ordered, he would just make that holding outright. *Slonaker*, supra.

[3]Recently in *State v. Castle*, 7th Dist. No. 08MA195, 2010-Ohio-_____, ¶13, when the state conceded that the trial court could not impose community service if the offender did not pay the court costs, we did not hold that the issue was not ripe for review. Rather, considering the concession, we held that the trial court could not impose community service if the offender did not pay the court costs.

court costs. Consequently, we overrule our prior decisions in *Heddleson and Walters* to the extent that they hold that the issue is not ripe for review.

¶{34} Accordingly as the issue is ripe for review, we hold that the trial court's failure to comply with R.C. 2947.23 at sentencing prohibits the court from ordering Gabriel to perform community service if he fails to pay his court cost. Accordingly, the trial court's sentencing entry is modified to prohibit imposition of community service as a means of collecting court costs. This assignment of error is sustained in part.

## *PRO SE* ASSIGNMENT OF ERROR

¶{35} "WAS DEFENSE ATTORNEY MICHAEL SAKMAR COMPETENT IN PRESENTING THE BEST POSSIBLE DEFENSE FOR DEFENDANT MICHAEL M. GABRIEL, SR. AS REQUIRED BY THE OHIO RULES OF PROFESSIONAL CONDUCT?

¶{36} Gabriel's *pro se* argument solely concentrates on the closing argument presented by defense counsel. He cites many statements made by counsel during closing argument that he claims bolsters the state's case rather than raising doubt about the state's position. Gabriel also asserts that counsel did not acknowledge his disability in the closing argument, but rather made it appear that he could move better than he can. He claims that the statements made by counsel in closing argument amounted to ineffective assistance of trial counsel.

¶{37} When reviewing the portions of the transcript that he cites and when reading the closing argument as a whole, it appears that Gabriel is attacking counsel's trial strategy. It is clear from reading the entire closing argument (and even the witnesses' testimony) that counsel's position was that Gabriel did nothing to interfere with the arrest, and thus, the state could not prove the element of doing an act to purposely prevent, obstruct, or delay performance of official act, i.e. purposely doing an act to prevent his son's arrest. The statements Gabriel is focusing on in attempt to show ineffective assistance of counsel are taken somewhat out of context. Gabriel's counsel was not bolstering the officer's testimony, however, he was also not bolstering his own client's testimony. Counsel was arguing that the truth was somewhere in the middle. The following excerpt of the closing argument best illustrates counsel's argument that the truth of the events was in the middle of the two testified versions of the events and that the defense was that Gabriel did no act to prevent his son's arrest.

**¶{38}** "* * * So Mr. Gabriel never really even got to the point where he could obstruct, interfere with the arrest.  He got close enough that Officer Craig – his red lights are flashing there, the hair on the back of his neck is standing up.  He even said something to the effect he was startled by Mr. Gabriel's move.  And, you know, maybe Mr. Gabriel wasn't moving fast, maybe he made a sudden move, something caught Officer Craig's eye.  * * *

**¶{39}** "* * *

**¶{40}** "* * * Which I guess coming back to Mr. Gabriel might well have done something to trigger Officer Craig's protective training instructs.  That doesn't mean Mr. Gabriel was interfering in the arrest of his son.  And I've heard a lot of testimony here.  All four people got to give the story.  And when you look at the testimony, and you will be given the instructions by the judge, you need to go back then to the statute, which Mr. Gabriel is charged with violating, the obstructing official business statute.  And you have got to look at the testimony in the light of did Mr. Gabriel with the purpose to prevent, obstruct or delay performance of official acts, did he purposely do something to hamper that and create a risk of physical harm to the officers?

**¶{41}** "He was cooperative, he was cooperative, he was cooperative, and then allegedly he was less cooperative.  But you've heard testimony from all four people there.  To find Mr. Gabriel guilty, you have to – you have to be able to see that – let me find my one card here.  There's eight bullet points, a little sheet that the prosecutor brought out and early on in the trial, you could see the first three bullet points are, you know, yes.  The defendant is the defendant. He is the proper person identified; this happened in Mahoning County, state of Ohio; and the defendant has no privilege to interrupt in the arrest of his son.  Those are the first three bullet points that the state is attempting to make.  And we agree with those three.

**¶{42}** "But I guess the last five, purposely – with the purpose to prevent, obstruct or delay, the arrest of his son.  He did an act, a specific act, hampering or impeding these officers in the performance of their duty, creating a risk of physical harm to the officers. Again, kind of listened [sic] to the prosecution's theory, it seems like their story is, yeah, he was cooperative, he was cooperative, he was cooperative and all of the sudden he snapped and tried to break up the arrest.  I find that one is hard to believe.  As he was cooperative, he was cooperative, he was cooperative and all of a sudden Officer Craig, with no reason whatsoever, without provocation, jumped

on the defendant and tackled him. Both of those stories seem just fanciful and unrealistic. The father identifies his son, brings him out to the police. Then, all of a sudden – you now, I guess, Mr. Gabriel can get around. He's not confined to a wheelchair, he's not crippled. But he's not 25 years old. He one time practiced marital arts. He's familiar with a two-hand bladed fighting stance. He also testified at this point of his life, he can no longer assume a two-hand bladed fighting stance due to the fact that his hips are crippled with arthritis, and that that evening he did not take a two-hand bladed fighting stance to confront Sergeant Vance to try to interrupt in the arrest of his son who he just literally brought out to the police.

¶{43} "Again, I've brought out three possible ways that this – that we could have got from point A to point B. I think the first two stories are a little fanciful. The third option where Officer Craig legitimately intervened to protect his fellow officer, I think that can happen.

¶{44} "And at the same time, Mr. Gabriel was not attempting to obstruct, delay, hamper, [or] interfere in the arrest of his son. I think if you look at the facts, look at the testimony, look at the bullet points, look at the law, the jury instruction which you will be provided by the judge I think you could only find one outcome in this matter and that would be that the defendant, Michael Gabriel, Sr. is not guilt of the offense of obstructing official business." (Tr. 386, 388-392).

¶{45} In order to show that the statements made in closing argument and the defense asserted amount to ineffective assistance of counsel, Gabriel has to show the two prong test articulated in *Strickland v. Washington* (1984), 466 U.S. 668. Under *Strickland,* a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that the defendant was prejudiced by counsel's deficient performance. Id. at 687; *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph one of syllabus. If this court finds that either prong fails, there is no need to analyze the remaining prong because in order for ineffective assistance of counsel to be shown, both prongs must be established by appellant. *State v. Herring,* 7th Dist. No. 06JE8, 2007-Ohio-3174, ¶43.

¶{46} Concerning whether counsel's choice of defense amounts to ineffective assistance of counsel, we have explained that an appellate court will not second guess trial strategy:

¶{47} "When considering an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of defense. See *State v. Phillips* (1995), 74 Ohio St.3d 72, 85 (a reviewing court must assess the reasonableness of defense counsel's decisions at the time they are made). Rather, the reviewing court "must be highly deferential." *Strickland,* 466 U.S. at 689.

¶{48} "Appellate courts, 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."' *Id.;* see, also, *State v. Hamblin* (1988), 37 Ohio St.3d 153, certiorari denied (1988), 488 U.S. 975." *State v. McGee*, 7th Dist. No. 07MA137, 2009-Ohio-6397, ¶14-15.

¶{49} During trial the complaint Gabriel brought against Officer Craig for his actions in arresting Gabriel was discussed. The police department investigated the complaint and Officer Craig was cleared of the matter. It was further explained that in his ten years as a police officer, Officer Craig has never had a previous complaint filed against him. Given those facts, and the differences in the versions of events, defense counsel's claim that the truth was in the middle of the two versions was a believable strategic stance to take. It was a position that possibly could be believed by the jury. Likewise, such position would promote the defense that even if Gabriel did move slightly toward Sergeant Vance, he did not do an act to hinder his son's arrest. The jury could believe that if he did walk toward the officer asking what was going on, he did not move in such a way to hinder the arrest. Moreover, as is shown in the above excerpt, counsel did acknowledge that Gabriel is disabled. Gabriel may have wished for counsel to state that Gabriel had to walk with two canes and thus, could not have moved toward the officer in a manner that could be deemed hindering the arrest. However, testimony at trial indicated that he was not using canes that day and that the officers did observe him to be moving slower. Thus, counsel's statement in closing that Gabriel was not in a wheelchair and that he could move around was accurate. (Tr. 379). Considering the strong presumption of reasonable professional assistance, we cannot find that the trial counsel's performance was deficient. Consequently, this assignment of error lacks merit.

## CONCLUSION

**¶{50}** For the above stated reasons, the first assignment of error and the *pro se* assignment are overruled. The second assignment of error is overruled in part and sustained in part. As to the trial court's imposition of a fine and court costs it is overruled. However, as to the trial court's failure to instruct at sentencing that if Gabriel fails to pay court costs he could be ordered to perform community service is sustained. Accordingly, the conviction and the trial court's imposition of a fine and court costs are hereby affirmed. However, the sentence entry is modified to indicate that the trial court is prohibited from imposing community control as a means of collecting court costs.

Waite, J., concurs.
DeGenaro, J., concurs.